CHARLES S. BLACKETT, FRANCIS H. BLACKETT, ELIZA-BETH W. TUTHILL, LOUISA A. MATHIS, WILLIAM L. BLACKETT and MARTHA C. BLACKETT, Appellants, v. S. B. ZIEGLER, Executor of the Estate of ELIZABETH W. LEWIS.

**Appeal:** BRIEFS: SPECIFICATION OF ERRORS: REVIEW.  Although a formal assignment of errors on appeal is no longer essential, still the appellant's brief should indicate clearly the errors he desires to have reviewed; and while it is desirable that the Supreme Court rule relating to brief making should be observed, failure to do so is not jurisdictional, and the court is not required to decline to pass upon asserted errors, even though the brief does not comply with the rule.

**Pleadings:** DEMURRER: AMENDMENT: MOTION TO STRIKE.  Where a demurrer to a petition was sustained and the defendant moved to strike an amended petition on the ground that it did not obviate the ruling on the demurrer, the court if convinced that a mistake was made in sustaining the demurrer could set aside the order and overrule the same, and the real question thus presented by the motion was the sufficiency of the petition with the amendment.

**Trusts:** LIMITATION OF ACTIONS.  Ordinarily the denial by a trustee of the rights of the *cestui que* trust, so that his possession be-

comes adverse, will set the statute of limitations in operation; and a transferee of the trust property becomes a trustee by construction of law, so that the statute of limitations begins to run from the time of transfer, or as soon as the *cestui que* trust has knowledge thereof.

**Same:** REMAINDERS. Where property is left to one in trust for life, upon his death to become the property of his heirs, and during the life estate the trustee transfers the property, the remainderman, in the absence of other circumstances, may assume that it is held by the transferee subject to his claim, and the statute of limitations will not commence to run against an action by him to preserve the trust until the life estate is terminated.

**Same:** FORMER ADJUDICATION: PLEADINGS. In this action to preserve and enforce a trust alleged to have been created by the testator in favor of one of his children, the remainder to plaintiffs, his heirs, the petition alleged that the executor conveyed certain real estate at a sum less than its value to his wife, one of the testator's heirs, with knowledge of the wife as to its actual value and of the trust impressed upon the property; that subsequently the executor turned over to his wife a portion of the trust fund; that the executor died and upon administration of his estate the remaining trust funds were turned over to his wife, but this was not alleged to have been done in settlement of the trust fund, nor was the discharge of the executor as trustee alleged, nor that the distribution was ordered or approved, although it was alleged that the plaintiffs were represented in the probate proceedings in a perfunctory way by a guardian *ad litem.* Plaintiffs ask that the trust fund be turned over to a trustee. *Held,* that the petition was not demurrable on the ground that the matters alleged had been adjudicated in the probate proceedings.

**Same.** In the absence of allegations to that effect it will not be presumed that the wife intended to hold the property in opposition to the terms of the trust and adversely to the plaintiff; and her holding with knowledge, as alleged, was not such a repudiation of the trust as would start the running of the statute of limitations against the plaintiff, so that the petition did not show on its face that the action was barred, thus rendering it subject to demurrer.

*Appeal from Fayette District Court.*—HON. L. E. FELLOWS, Judge.

MONDAY, APRIL 11, 1910.

WILLIAM BLACKETT died testate October 5, 1879. His will was admitted to probate December 1st of the same year. It left all his property to his wife during her life, and directed that both real and personal property be converted into money by the executors of his estate, "and divided into three equal parts among my three children, as follows, to wit: One share to my son H. S. Blackett of Lawler, Chickasaw County, Iowa, and one share to my daughter Elizabeth W. Lewis of Clermont, Iowa, the remaining one-third to be invested by said executors in first mortgages on farm property at the highest legal rate of interest that can be obtained, and the net amount of proceeds to be paid to my son James P. Blackett of Clermont, Iowa, during the term of his natural life, and after his death the said share to be the property of the natural heirs of the said James P. Blackett according to the legal course of descent and inheritance." W. C. Lewis, the husband of one of the beneficiaries, and H. S. Blackett were named as executors. The petition alleged that plaintiffs were the children of James P. Blackett, and, in substance, that the entire fund held by the executor in trust for the benefit of said James and children had been transferred to Elizabeth W. Lewis by the executor, and prayed that she account therefor. Thereafter Mrs. Lewis died, and S. B. Ziegler, the executor of her estate, was substituted as defendant. A demurrer to the petition was sustained, and plaintiffs granted leave to plead over. They filed an amendment thereto withdrawing all of it after the first paragraph and alleging other matters differently. A motion to strike this was sustained. The plaintiffs elected to stand on the ruling, and the petition as amended was dismissed. They appeal.—*Reversed.*

*C. S. Blackett, Preston & Fletcher,* and *W. C. Lewis,* for appellants.

*S. B. Ziegler, W. J. Ainsworth,* and *Clements & Estey,* for appellee.

LADD, J.—I. Appellee challenges the propriety of considering this appeal, for that, as is argued, no errors for reversal are assigned. The formal assignment of errors is no longer essential; but in the preparation of his brief the appellant is still required to indicate to this court in an understandable way the errors in the rulings of the trial court which he seeks to have reviewed. *Cooper v. City of Oelwein,* 145 Iowa, 181. It is desirable, as a matter of convenience, that the order prescribed in rule 54 shall be adhered to in brief making; but this is not jurisdictional, and the court ought not to decline to pass on errors asserted even though, as in this case, the brief does not proceed in the orderly way suggested by that rule.

1. APPEAL: briefs: specification of errors: review.

Four errors are assigned, and authorities said to lay down certain principles are cited, and, even though the argument is meager and indicative of slight attention having been bestowed on the important questions involved, this is not ground for declining to review the rulings complained of.

II. After a demurrer to the petition as first amended had been sustained, a second amendment thereto was filed, and on motion was stricken from the record. This is said to have been erroneous on three grounds: (1) Because the last amendment added Augusta B. Blackett as a party plaintiff; (2) for that it was a substitute for all former pleadings and corrections of statements of fact pleaded before and was not vulnerable to demurrer because barred by the statute of limitations or to the plea of *res adjudicata;* and (3) that the court in sustaining the demurrer was in error and should have corrected the ruling by overruling the motion to strike. The brief contains little, if

2. PLEADINGS: demurrer: amendment: motion to strike.

anything, more than a bare statement of these propositions; but the points raised are apparent upon the reading of the pleading. Taking the assignments of error up together, it is to be said that, had the court become convinced of a mistake in sustaining the demurrer, the order doing so might have been set aside and it overruled. *Jenkins v. Shields,* 36 Iowa, 526. So too, if because of the allegations of new matter in the second amendment, material corrections in the former pleading were made, or important defects cured, and thereby the ground or grounds on which the demurrer was sustained obviated, the motion to strike should have been overruled. But if the demurrer was rightly sustained, and the ruling was not obviated by allegations in the last amendment · to the petition, the order striking such amendment was rightly entered. *Wapello State Savings Bank v. Colton,* 143 Iowa, 359; *Express Co. v. Des Moines National Bank,* 146 Iowa, 448. The result is that if the petition as amended stated a good cause of action, the court erred in striking the amendment which withdrew all the allegations of the petition save those with respect to testator's death and the admission of his will to probate, and therefore the sufficiency of the petition with the amendment alone need be considered.

III. The other assignment of error is "that, under the terms of the William Blackett will, an express trust was created which could not be matured during the life estate by either trustee or remainderman." One-third of the testator's estate, after being reduced to money, was to be invested in real estate mortgages by the executors, and the net income paid to James P. Blackett during life, and upon his death ·the share to be the property of his natural heirs "according to legal course of descent and inheritance." Manifestly, this created an express trust under which the executor, as trustee, was required to deal with the property impartially as between the life tenant and the remainder-

3. TRUSTS: limitation of actions.

man.   While the trust so created subsisted, the statute of
limitations might not have been invoked as a bar to suit
for its enforcement by the *cestui que* trust.   Ordinarily,
upon denial of the right of the *cestui que* trust by the
trustee, so that his possession of the trust estate may be
said to have become adverse to any claim of the *cestui que*
trust, lapse of time may be interposed by way of a plea
in bar.   These rules have been of universal application
at least since *Marquis of Cholmondeley v. Lord Clinton,*
1 Jac. & W. 1, and *Kane v. Bloodgood,* 7 Johns. Ch.
(N. Y.) 90 (11 Am. Dec. 417), and were applied by
this court in *Wilson v. Green,* 49 Iowa, 251.   Moreover,
property, whether real or personal, which is impressed
with or subject to such trust, when transferred or con-
veyed by the trustee, not in the course of executing the
trust, to a mere volunteer or purchaser for value with no-
tice, is not relieved therefrom but continues, and such
volunteer or purchaser acquires and holds the property
subject to the same trust which previously impressed the
property and becomes the trustee for the original bene-
ficiary.   "Equity impresses the trust upon the property
in the hands of the transferee or purchaser, compels him
to perform the trust if it be active, and to hold the prop-
erty subject to the trust, and renders him liable to all
the remedies which may be proper for enforcing the right
of the beneficiary."   3 Pom. Eq., section 1048.   Such
transferee or purchaser is trustee by construction of law,
and, of course, the statute of limitations ordinarily would
begin to run from the time of the transfer, or as soon
thereafter as the *cestui que* trust were advised of the fact.
*Neal v. Bleckley,* 51 S. C. 506 (29 S. E. 249); *Johnson
v. Prairie,* 91 N. C. 160.   But this can only be so where
the *cestui que* trust is not prevented from suing by disa-
bility or not being entitled to possession.   *Parker v. Hall,*
2 Head (Tenn.) 641; *Duckett v. National Mechanics'*

*Bank,* 86 Md. 400 (38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513); *McCoy v. Poor,* 56 Md. 197.

The principle is well stated in Wood on Limitations, section 208:

> When the legal title of property is vested in a trustee who can sue for it, and fails to do so within the statutory period, an infant *cestui* who has only an equitable interest will also be barred; (a) but the rule is otherwise when the legal title is vested in the infant, or cast upon him by operation of law. The rule only applies in cases where the trustee might have brought an action, but neglected to do so. If he has estopped himself from suing by a sale of the property, thus uniting with the purchaser in a breach of his trust, the wrong is to the beneficiaries, not to him, and, while he can not sue, the beneficiaries, if under any disability, are not affected by the statute. And if the *cestui* trust was ignorant of the sale, and the purchaser knew of the trust, the *cestui que* trust will not be barred. . . . The rule is that a person who purchases of a trustee the whole or part of the trust property, bona fide, and without notice or knowledge of the trust, will acquire a good title as against the *cestui que* trust; but a person who purchases trust property with notice of the trust holds the title as trustee, and stands in the place of his grantor, and is chargeable with the trust.

In Perry on Trusts, section 860, the author, after observing that the transferee of an express trust is not a trustee save by construction of law until so decreed, and that, upon denial of the trust, an adverse holding, if continued for the statutory period, will bar recovery by the *cestui que* trust, adds: "But, in these cases, the rights of the *cestui que* trust can not be barred until his rights fall into possession. If, therefore, the *cestui que* trust holds only in remainder or reversion, the statute will not begin to run until his right to the possession falls in by the determination of the particular estate. So, if the

*cestui que* trust is under disability, the statute will not begin to run until the disability is removed."

The principle with reference to remaindermen was recognized in *McCoy v. Poor,* 56 Md. 197; but there the estate in remainder was coupled with a present interest, and for this reason the action was held to be barred. In *Marray v. Quigley,* 119 Iowa, 6, the remainder had vested; but in *Westcott v. Meeker,* 144 Iowa, 311, involving real estate, the life tenant executed a deed purporting to convey the entire estate. The grantees had been in possession thereunder claiming absolute ownership for about thirty-five years, and the court held that such possession was not adverse to the heirs of the life tenant, who died in 1906, on the theory that no one could say until the death of the life tenant who his heirs would be. In this respect, the remainder was declared to have been contingent, and, as it had not vested until the death of the life tenant, the remaindermen until then had no right in possession or expectancy .which might be asserted to .the realty. Possibly cases may arise where the assertion of title to property acquired from a trustee of an express trust is so direct and hostile as to challenge action on peril of loss through the running of the statute; but, in the absence of anything other than the transfer of the property and the continued possession of the trustee, the remainderman may assume that it is held subject to his claim to and right therein, and, under these circumstances, the statute of limitations will not begin to run until the life estate has terminated.

4. SAME: remainders.

Here the action is not for the recovery of the property, but the relief sought is preservation of the estate and the execution of the trust according to the terms of the will. True, the interest of the plaintiff is contingent upon surviving the life tenant; but in this respect somewhat like the inchoate right of dower, and for like reasons, an action is maintainable to protect the same. *Buzick*

v. *Buzick,* 44 Iowa, 259; *Atwood v. Arnold,* 23 R. I. 609 (51 Atl. 216); *Clifford v. Kampfe,* 147 N. Y. 385 (42 N. E. 1); *Chantland v. Sherman,* 148 Iowa, 352.

IV.  Reverting now to the petition, we find that it alleges the admission to probate of the will of William Blackett deceased, in December, 1879.  The will is attached thereto, from which it appears that the deceased divided his property in three equal shares, leaving one-third to H. S. Blackett, one-third to his daughter, Elizabeth W. Lewis, and the remaining one-third "to be invested by said executors in first mortgages on farm property at the highest legal rate of interest that can be obtained and the net amount of proceeds to be paid to my son, James P. Blackett of Clermont, Iowa, during the term of his natural life, and after his death the said share to be the property of the natural heirs of said James P. Blackett according to the legal course of descent and inheritance."  The amendment to the petition alleged that plaintiffs are the children and wife of said James P. Blackett; that by the terms of said will one-third of the estate was directed to be diverted into a trust fund by the executor and thereafter to be by him applied as above stated; that W. C. Lewis, husband of Elizabeth Lewis, was appointed executor of the estate of William Blackett in December, 1879, and took possession of all the property of the estate, being personal property of the value of $8,620, and real estate of the value of $15,000, of which property $7,875 was held by him as trustee under the will as stated; that on July 21, 1887, the said executor conveyed to his wife, Elizabeth W. Lewis, certain real estate for the consideration of $1,864, but of the actual value of $12,000, the grantee knowing the value thereof and of the trust impressed thereon; that about August 15th, of the same year, the executor turned over to Mrs. Lewis the sum of $1,338 of the trust fund referred to; that this sum re-

5. SAME: former adjudication: pleadings.

mained in the possession and control of Mrs. Lewis until
her death, she knowing the character of said fund; that
said executor transferred other real property for the con-
sideration of $4,400, but of the actual value of $5,000;
that at the time of said executor's death, November 20,
1888, the sum of $2,868 belonging to the trust fund re-
mained in his possession; that H. S. Blackett, one of the
heirs and legatees under the will, assigned all of his in-
terest in the estate to the executor in satisfaction of his
indebtedness to the estate; that on July 21, 1887, Mrs.
Lewis was owner of one-half of the property conveyed to
her, and the remaining one-half was a part of the trust
fund; that plaintiffs are damaged by reason of said trans-
fer in the sum of $4,568; that on May 20, 1890, the es-
tate of the executor, W. C. Lewis, was administered upon,
and "all of the property of said estate, in which was in-
cluded and intermingled the sum of about $2,868 of the
trust fund aforesaid, was at the distribution of the said
estate turned over to Elizabeth W. Lewis, heir and lega-
tee thereof, and remained in her possession and control
up to the time of her demise, but the sum was turned
over to her and received by her with full knowledge of
such trust;" that S. B. Zeigler, executor of her estate,
has in his possession and control $8,775, which is the
trust fund here created, by and under the terms of the
last will of William Blackett, and the estate of Mrs. Lewis
is ready for distribution, and plaintiffs ask that the prop-
erty belonging to said trust be set aside and the trust
preserved; that James P. Blackett, the life tenant under
said trust, is still alive, and, though plaintiffs are not
entitled to the possession of the trust fund, ask that the
property of the trust be preserved for their benefit; that
plaintiffs have no plain, speedy, and adequate remedy at
law, and they pray that the said executor "be ordered to
turn over the said trust fund with interest thereon to such
suitable person as trustee of said fund as the court may

direct; and that he be directed not to distribute same as belonging to the estate of Mrs. Lewis and for general equitable relief."

The motion to strike was based on two grounds: (1) That allegations of a previous amendment, filed in response to a motion for more specific statement, were omitted from the last amendment, and other facts omitted to avoid their legal effect, and attempts to state a new cause of action; and (2) that any change therein does not obviate the ruling on the demurrer to the petition. Taking up these grounds in the order mentioned, it is enough to say that the allegations of the amendment in response to the ruling on the motion for specific statement are included. Nor do we think omissions of matters in the original petition may be said to have been made with the view merely of avoiding their legal effect. True, the so-called "trust fund" is more specifically described in the original petition by alleging that upon distribution of the estate the executor turned over to Mrs. Lewis the one-third thereof assigned to her by the testator's widow, one-third of the remaining two thirds as her share, another one-third of said two-thirds derived from H. S. Blackett in satisfaction of the claim of the estate against him, and that the last one-third of said two-thirds was offset against a judgment which he had obtained against James P. Blackett and delivered to her; so that, in the words of the petition, "the executor thereof turned over to the defendant, and the defendant received as her absolute property, the entire proceeds of the estate."

Clearly enough, if the share of H. S. Blackett, having been transferred to the executor in satisfaction of an indebtedness owing the estate, should have been distributed according to the terms of the will and the interest of the heirs to be of James P. Blackett, it could not be appropriated to the satisfaction of the judgment of the executor against the life tenant. Regardless of whether the

interest of the life tenant was thereby extinguished, that of the said heirs could not be thus appropriated to the discharge of the judgment against him. In so far, then, as they are concerned, a part of the estate was alleged to have been transferred without authority of law to Mrs. Lewis. This is not alleged to have been done in settlement of the trust fund, the care of which devolved on the executor as trustee; nor does the petition allege the discharge of the executor as such. Neither the report of the executor nor the notice thereof was set out. Indeed, it was not averred there was either, or that the distribution was ordered or approved by the court, though plaintiffs alleged that they were not represented in the final distribution, save in a perfunctory way, by a guardian *ad litem* appointed by the court.

Even if it were to be inferred from this that some notice was served authorizing such action of the court, such inference ought not go to the extent of presuming that it was of a particular report or application, praying that the executor be permitted to violate the terms of a· trust when even the existence of such a report or application has not been averred. As the distribution said to have been made was not such as any court when advised would have made, it is not to be presumed that it was by virtue of judicial order or approval. In the orderly course of procedure, the executor's account must have been settled, and the portions of the estate not held in trust distributed, and the executor continued as trustee of the trust fund for the benefit of the *cestuis que trustent*. Instead, as alleged in the original petition, he transferred this to Mrs. Lewis as her absolute property, and she received it as such. As she also took under the will, she must have been aware of its contents, and therefore of the fact that one-third of the amount received by her was impressed with a trust in favor of the heirs of James P. Blackett upon his death. The last amendment, then, omit-

ted nothing done under official sanction of the court which would avoid the previous ruling. But several conclusions of fact were omitted, such as that Mrs. Lewis received the property from the executor as in her own right, and, though the property said to be held in trust is designated, its derivation is not so particularly described. The amendment in these respects is not open to exception, for the very object in filing it was to obviate the legal conclusion announced in the ruling on the demurrer. The correctness of the ruling on the second ground of the motion depends on whether the petition as amended is vulnerable to the demurrer interposed to the petition. It was in three paragraphs: (1) That the action was barred by the statute of limitations; (2) that the matters set up had been adjudicated in the probate court; and (3) that the facts stated did not entitle the plaintiffs to the relief demanded. Enough has been said to dispose of the second of these.

The amended petition contains nothing indicating that Mrs. Lewis received or claimed the trust fund as her own. The allegations as seen are that she received $1,338

6. SAME.

thereof knowing that it belonged to the trust fund and retained it until her death as she did $2,868 thereof mingled with other funds. In the absence of allegation to that effect, it is not to be presumed that she intended to hold this property for other purposes than in compliance with the provisions of the will and for the benefit of those entitled thereto. The executor, doubtless in transferring the property as alleged, violated his duties as trustee; but merely receiving the funds with knowledge of their character and retaining them as alleged was not a repudiation of the trust impressed thereon in favor of those who might take the remainder upon the death of the life tenant, and which Mrs. Lewis thereby impliedly undertook to execute, and for this reason the statute of limitations does not appear from the face of the amended petition to have begun to

run. To start the statute in such a case, there must have been some claim adverse to the interest of the remainder-men as such, and not merely possession of the property.— *Reversed.*